SARAH K. SWIFT v. H. B. WITHERS.[1]

November 26, 1895.

Nos. 9573—(149).

**Impeachment of Witness by Contradiction.**

The question at issue was whether or not a sale had been made by defendant to plaintiff of the property replevied. Plaintiff's husband was called as a witness on her behalf, and testified that he conducted most of the negotiations for the purchase of the property on behalf of his wife, and all through his testimony he talked of the transactions as largely his own, and the property as largely his own, generally using the word "we" when speaking of the same. He was asked on cross-examination if he did not, after the alleged sale, state to a certain person, at a certain time and place, that he did not purchase the property, and answered that he did not so state. *Held*, it was error to refuse to permit him to be impeached by proving that he did so state.

Appeal by defendant from an order of the district court for Polk county, Ives, J., denying a motion for a new trial.    Reversed.

*Edward George* and *P. J. Russell*, for appellant.

*H. Steenerson*, for respondent.

CANTY, J.    Defendant had 10 horses, which he had brought into Polk county for sale.    On April 1, 1893, he procured board for himself and the horses at the farm and residence of plaintiff and her husband by agreement with the husband.    He remained there with his horses until April 19, when he took them away.    He returned with them shortly afterwards, and all parties agree that they were then negotiating a sale of the horses from him to Mrs. Swift; that he demanded security for the purchase price, and that she refused to give him security.    Plaintiff claims that she purchased the horses, and defend-

[1] Reported in 65 N. W. 85.

ant denies this.    She claims that she traded some of the horses for some other stock.    He denies this, and claims that he made the trades himself, and that the stock so received is his.    In June he took away the remaining horses and the stock aforesaid.    Thereupon she brought replevin for the same.    On the trial she had a verdict, and from an order denying his motion for a new trial he appeals.

On the trial, her husband, George M. Swift, was called by her as a witness, and testified on her behalf.    On cross-examination he was asked if he told a Mr. Abbott, about May 10, at Mentor, that he did not buy the horses,—to use the exact language, "that you did not buy the stock?    Answer.  No, sir; I did not."    Defendant afterwards called Abbott as a witness, and offered to prove by him that Swift did tell him so.    Plaintiff objected, on the ground that it was incompetent and immaterial.    The objection was sustained, and defendant excepted.    This is assigned as error.

It is urged by respondent that the evidence offered was immaterial, for the reason that it was not claimed that George M. Swift bought the horses; that, on the contrary, it is claimed that his wife bought them, and that the evidence offered is simply an attempt to contradict and impeach him on an immaterial matter.    Of course, if it was such an attempt, respondent's contention is correct.    But it is a very common thing for a husband who does business for his wife, or does business in his wife's name, to speak of the business and the business transactions as his own.    From the evidence this appears to be such a case.    On the examination of George M. Swift by plaintiff's own attorney, the following are samples of the questions and answers:

"Question. What was the next thing that happened with reference to those horses?

"Answer. We kept on trying to break them, and in a few days a neighbor of mine, who had spoken to me several times, said he wanted to trade some cattle for a pair of horses.    *    *    *

"A. I told Sensel to come over, and we would trade.

"Q. Did you trade with Sensel?

"A. Yes, sir.

"Q. What did you trade?

"A. Traded a pair of horses.

"Q. You traded two of the horses you got from Withers?

"A. Yes, sir.

"Q. What did you get for them?

"A. We got one yoke of oxen, a pair of three year old steers, and a cow. * * *

"Q. Did you dispose of any of the other horses?

"A. Yes, the next ones we disposed of was to Michael Horton. * *

"Q. What did you get?

"A. We got one yoke of oxen, one two year old steer, and ten bushels of oats, and a note for $45.

"Q. Did you dispose of any of the other horses?

"A. Yes, sir.

"Q. To whom?

"A. We traded two horses to Hans Hagen.

"Q. What did you get for them?

"A. Three oxen, and a note for $70, and $5 cash that was turned on a pair of two year old steers that Withers got from Hans Hagen at the same time. * * *

"Q. You have disposed of these horses. What did you do with the proceeds?—the two to Sensel, two to Hagen, and two to Horton?

"A. Sensel got sick of the bronchos, and wanted to trade back, and we had sold some of the stock that we got from Sensel, so we let him have one of the steers we got from him and a pair of five year old oxen we took from Hans Hagen, back for the horses again.

"Q. So you got the horses back?

"A. Yes, sir."

It will be observed that he never referred to his wife's name, or to her in any way, unless it was by including her with himself when he used the word "we." The words used were invariably "you" and "we."

We are of the opinion that under the circumstances it was error to reject the offer to contradict the witness George M. Swift, and for this reason the order appealed from should be reversed, and a new trial granted. So ordered.